508 S.E.2d 16

Reather B. TILLEY, Willis E. Wood, Owena R. Wood, Louise Williams, on behalf of themselves and all others similarly situated, Respondents,

v.

PACESETTER CORPORATION, including but not limited to its division known as Federal Diversified Services, Appellant.

No. 24848.

Supreme Court of South Carolina.

Heard June 16, 1998.

Decided Oct. 26, 1998.

Rehearing Denied Dec. 3, 1998.

34

Desa Ballard, of West Columbia; Miles Loadholt, of Ness, Motley, Loadholt, Richardson & Poole, of Barnwell; Daryl L. Williams, of Jeter & Williams, of Columbia, and Richard Sinkfield, of Rogers & Hardin, of Atlanta, Ga., for appellant.

Steven W. Hamm and Mary S. League, both of Richardson, Plowden, Carpenter & Robinson, PA, of Columbia; T. Alexander Beard, of Beard Law Offices, of Charleston; Bradford P. Simpson and B. Randall Dong, both of Simpson, Dong & Wingate, LLC, of Columbia; Daniel W. Williams, of Bedingfield & Williams, of Barnwell, for respondents.

David W. Robinson, II, and J. Kershaw Spong, both of Robinson, McFadden & Moore, of Columbia; William C. Hubbard, John T. Moore, C. Mitchell Brown, B. Rush Smith, III, and Jeffrey A. Jacobs, all of Nelson, Mullins, Riley & Scarborough, of Columbia, for Amici Curiae South Carolina Bankers Association and South Carolina Financial Services.

PER CURIAM:

This is a class action in which the trial court granted respondents (hereafter Buyers) summary judgment. The court ruled that appellant, Pacesetter Corporation, failed to comply with the attorney and insurance agent preference provisions of the South Carolina Consumer Protection Code (CPC). We affirm.

## FACTS

Pacesetter is a Nebraska Corporation which sells aluminum windows, awnings, and doors, in South Carolina. Buyers in this case each entered into a "Retail Installment Sales Contract and Mortgage" to purchase products from Pacesetter, which was to be secured by a mortgage on their homes. The contracts contain the following provision:

OBLIGATIONS PERTAINING TO PROPERTY INSUR-
ANCE AND MY REAL ESTATE: 1. I promise to keep my
house in good repair and keep it insured for at least 80% of
its replacement value by buying fire and extended coverage
insurance policy. The insurance company must be approved
by you, ... and the company must agree that it will not
cancel my policy without first telling you. I authorize the
insurance company to pay you directly for any loss. You
can choose to use this insurance payment to either repay
any amounts I owe you or to repair my house. I have the
option of providing property insurance through an existing
policy or through a policy independently obtained and paid
for by me ... 5. If I do not insure my house or fulfill my
obligations to my real estate, then you can do it for me (but
you do not have to). If you do pay any of these obligations
for me, I agree to pay you back on demand plus interest.
Until I pay you back, these amounts will be added to my
debt to you which is secured by my real estate and house. I
know that if you decide to buy insurance for me you do not
have to obtain any homeowner or liability insurance.

Subsequent to entering the contracts,
Buyers instituted this action pursuant
to S.C.Code Ann. § 37–2–413, contending
Pacesetter failed to ascertain their preference of attorney and
insurance agent, in violation of S.C.Code Ann. § 37–10–102.[1]
They sought damages pursuant to S.C.Code Ann. § 37–10–

---

1. Section 37–2–413(2) provides:
 With respect to a consumer credit sale that is secured in whole or in
 part by a lien on real estate the provisions of § 37–10–102(a) apply
 **whenever the seller requires the debtor to purchase insurance or pay
 any attorney's fees** in connection with examining the title and closing
 the transaction. (Emphasis supplied).
 Section 37–10–102(a) provides, in pertinent part:
 Whenever the primary purpose of a loan that is secured in whole or
 in part by a lien on real estate is for a personal, family or household
 purpose—
 (a) The **creditor must ascertain prior to closing the preference of
 the borrower as to the legal counsel that is employed to represent
 the debtor** in all matters of the transaction relating to the closing of
 the transaction **and ... the insurance agent to furnish required
 hazard and flood property insurance** in connection with the mort-
 gage and comply with such preference. (Emphasis supplied).

105,[2] and requested class certification. Pacesetter moved to dismiss, contending the remedies provided by section 37–10–105 were not applicable to the "Consumer Credit Sales" in question, and that two of the causes of action (those of the Woods and Tilley) were barred by the statute of limitations. Judge Henry Floyd denied Pacesetter's motion to dismiss and granted plaintiffs' motion for class certification.

Thereafter, Judge Rodney Peeples granted Buyers summary judgment on the issue of liability, finding Pacesetter had failed to obtain Buyers' preference as to attorney and insurance agent, in violation of section 37–2–413(2).

### ISSUES

1. Did the circuit court err in finding Pacesetter liable, as a matter of law, under S.C.Code Ann. § 37–2–413(2)?

2. Did the court err in finding Buyers were entitled to seek the remedies provided under S.C.Code Ann. § 37–10–105?

3. Did the court err in applying the statute of limitations found in S.C.Code Ann. § 37–5–202?

4. Did the court err in certifying the class?

### 1. APPLICABILITY OF SECTION 37–2–413

■ Pacesetter contends section 37–2–413(2) is inapplicable to this case. We disagree.

---

2. At the time this action was instituted, section 37–10–105 provided, in pertinent part, as follows:

§ 37–10–105. Penalties for violations.
With respect to a loan transaction subject to the provisions of this chapter, any person who shall receive or contract to receive a loan finance charge, or other charge or fee in violation of this chapter shall forfeit—
(a) the total amount of the loan finance charge and the costs of the action; and the unpaid balance of the loan shall be repayable without any loan finance charge;
(b) double the amount of the excess loan finance charge or other charges or fees actually received by the creditor or paid by the debtor . . .
This section was amended effective June, 1997; the amendments are not at issue in this appeal.

Whenever a consumer credit sale is secured in whole or in part by a lien on real estate, section 37–2–413(2) makes the attorney and insurance preference provisions of section 37–10–102(a) applicable if the seller requires the debtor to purchase insurance or pay any attorney's fees in connection with examining the title and closing the transaction.

Essentially, Pacesetter contends section 37–2–413(2) does not require the preference notice where, as here, buyers are permitted to provide insurance themselves through an existing policy, and are not charged a premium by the lender. We disagree.

■ If a statute's language is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion for employing rules of statutory interpretation and the court has no right to look for or impose another meaning. *Paschal v. State Election Comm'n,* 317 S.C. 434, 454 S.E.2d 890 (1995); *Carolina Power & Light Co. v. City of Bennettsville,* 314 S.C. 137, 442 S.E.2d 177 (1994).

It is undisputed that Pacesetter's contracts contain a provision in which the buyer promises to "**buy** ... a fire and extended coverage insurance policy," and which permits Pacesetter to do so if the buyer fails to do so. Buyers are contractually **required** to purchase insurance on their homes.[3] The trial court correctly ruled there was no genuine issue of material fact concerning this issue.

Pacesetter next contends the court erred in finding that once the preference provisions were triggered with regard to **insurance** notification, the seller was also required to give notice of an **attorney** preference, regardless of whether an attorney was actually employed in connection with the transaction, and regardless of whether the debtor was required to pay any attorneys fees. It contends the attorney preference

---

3. Pacesetter contends the trial court should have considered testimony of its employees that it never enforced the insurance provision of its contract. Given the fact that buyers were contractually required to purchase insurance, it is simply irrelevant whether or not Pacesetter chose to enforce its contract. This is particularly true in light of Pacesetter's contractual non-waiver of claims clause, permitting Pacesetter, at any time it chose, to foreclose by virtue of a buyer's failure to obtain insurance.

notice is required only if the debtor is actually required to pay an attorney's fee. We disagree.

The literal terms of the statute require that whenever the seller requires the debtor to purchase insurance **or** pay any attorney's fees, the seller must comply with the preference provisions. Construing this provision liberally, as we must,[4] we find the statute unambiguously requires the preference notice as to **both** attorney and insurance agent whenever the seller requires **either** the purchase of insurance **or** the payment of any attorney's fees.[5]

■ Finally, Pacesetter contends it substantially complied with the notice requirements of 37–10–102(a), as required by this Court's recent opinion in *Davis v. NationsCredit Financial Services Corp.*, 326 S.C. 83, 484 S.E.2d 471 (1997). We disagree.

*Davis* was a certified question which addressed the lender's use of a separate piece of paper to ascertain a borrower's preferences of legal counsel and hazard insurance, rather than including a preference statement on the first page of the credit application. Here, there is no separate statement, nor any attorney/insurance preference statement. The mere fact that Pacesetter's contracts gave debtors the "option of providing property insurance through an existing policy or through a policy independently obtained" simply does not meet section 37–10–102(a)'s requirement that the seller **"must ascertain the preference** of the borrower as to the . . . insurance agent to furnish required hazard and flood property insurance . . ."" Accordingly, the trial court properly ruled Pacesetter had not substantially complied with the statute.

---

4. S.C.Code Ann. § 37–1–102 provides "(1) This title shall be liberally construed and applied to promote its underlying purposes and policies."

5. In light of our holding, it is unnecessary to decide whether the fees charged by Pacesetter in connection with its closing were, in fact, "attorneys fees." *But see State v. Buyers Service Co.*, 292 S.C. 426, 357 S.E.2d 15 (1987) (preparation of deeds, notes, and other legal instruments related to mortgage loans and transfers of real property by a commercial title company constitutes the unauthorized practice of law).

## 2. REMEDIES UNDER SECTION 37–10–105

■ Pacesetter contends the remedies found in section 37–5–202 are the **exclusive** remedy for a violation of the attorney preference provisions in regard to consumer credit sales. We disagree. Construing the statutes liberally, as required by section 37–1–102,[6] we find Buyers may seek the remedies set forth in section 37–10–105.

Section 37–10–101 states that **"unless otherwise provided,"** Chapter 10 of title 37 applies only to designated loan transactions other than consumer loan transactions. Section 37–2–413(2) "otherwise provides," making section 37–10–102(a) applicable whenever the sale is secured by a lien on real estate, and the seller requires the debtor to purchase insurance or pay any attorney's fees in connection with closing the transaction.

Pacesetter contends that, in providing a specific remedy in 37–5–202[7] for violations of section 37–2–413, the legislature intended 5–202 as the exclusive remedy. We disagree. Had the Legislature so intended, it could have specifically provided that section 37–5–202 was the exclusive remedy. *Accord Hainer v. American Medical International,* 328 S.C. 128, 492 S.E.2d 103 (1997) (if legislature had intended certain result in a statute, it would have said so). Under a liberal construction of the CPC, we find the section 37–10–105 remedies are

---

6. Pacesetter contends the remedies of section 37–10–105 are penal in nature such that the statute should be strictly construed against the purchasers. As Judge Floyd noted, however, strict construction of penal statutes may be modified by affirmative legislative action. 2B Singer, *Sutherland Statutory Construction,* section 59.06. Further, this Court has held that recognized rules of statutory construction must give way to the cardinal rule of legislative intent. *Gardner v. Biggart,* 308 S.C. 331, 417 S.E.2d 858 (1992). *See also Bell Finance Co. v. S.C. Dept. of Consumer Affairs,* 297 S.C. 111, 374 S.E.2d 918 (Ct.App.1988) (penal statutes should not be subjected to strained interpretation in order to exclude from their operation cases which would otherwise be encompassed). In light of section 37–1–102's requirement of liberal construction of the CPC, a strict construction is unwarranted.

7. Section 37–5–202 provides that, for violations of section 37–2–413, a consumer has a right to recover actual damages and also a right, in an action other than a class action, to recover a penalty between $100.00–$1000.00.

available.[8]

### 3. STATUTE OF LIMITATIONS

 There is no statute of limitations set forth in Chapter 10 of Title 37 for violations of section 37–10–105.[9] Judge Floyd ruled the statute of limitations set forth in section 37–5–202 applied (no action pursuant to this subsection may be brought more than one year after the scheduled or accelerated maturity of the debt). We disagree.

Section 37–5–202 provides, in pertinent part, as follows:

(1) **If a creditor has violated any provisions of this title applying to ... attorney's fees (§§ 37–2–413 and 37–3–404), ... the consumer has a cause of action** to recover actual damages and also a right **in an action other than a class action,** to recover from the person violating this title a penalty in an amount determined by the court not less than one hundred dollars nor more than one thousand dollars. With respect to violations arising from sales or loans made pursuant to a revolving charge or a revolving loan account no action pursuant to this subsection may be brought more than two years after the violation occurred. With respect to violations arising from other consumer credit transactions, **no action pursuant to this subsection** may be brought more than one year after the scheduled or accelerated maturity of the debt.

Clearly, the one year statute of limitations period applies to **actions pursuant to 37–5–202.** As section 37–5–202 specifically prohibits class actions, plaintiffs could not have brought their action pursuant to that subsection. Accordingly, the statute of limitations in 5–202 does not apply to Buyers' claims.

---

8. Additionally, in *Camp v. Springs Mortgage Corp.,* 310 S.C. 514, 426 S.E.2d 304 (1993), this Court clearly implied that, in light of the purpose of the CPC to protect consumers, the remedies available under 37–10–105 were available to the debtor in a consumer loan transaction.

9. As amended in 1997, section 37–10–105 now provides for a three year statute of limitations. The amendments specifically note, however, that no inference should be drawn as to the applicable statute of limitations for pending actions.

■ We find the applicable statute of limitations is three years pursuant to S.C.Code Ann. § 15–3–540(2) (an action upon a liability created by statute upon a penalty or forfeiture). Without section 37–10–105, Buyers would have no claim here, as their sole remedy would be under 5–202 which prohibits class actions. *Accord Sauls–Baker Co. v. Atlantic Coast Line R.R.,* 109 S.C. 285, 289, 96 S.E. 118, 119 (1918) (where action is allowed only by virtue of statute for penalty, it is an "action upon a statute for a penalty"). However, we disagree with Pacesetter's assertion that two of the present claims are barred by this three year limitations period. We find the limitations period set forth in section 15–3–540(2) begins to run each time a payment is made.

Section 37–10–105 recodifies the penalty for usury in former S.C.Code Ann. § 34–31–50. Haynsworth and Smith, *South Carolina Consumer Protection Code and Comments,* 399, Comment 1 (S.C. Bar–CLE Div. 3rd Ed.1996). The statute of limitations for an action seeking the remedies recoverable for usury begins to run at the time each payment is made on the loan. *Stewart v. Fowler,* 16 S.C.L. (1 Harper) 403 (1824). Accordingly, although we find the three year statute of limitations applicable, it begins to run from each payment,[10] such that plaintiffs' claims are not barred.

## 4. CLASS CERTIFICATION

Finally, Pacesetter contends the circuit court erred in certifying the class in this case. We disagree.

■ A trial judge's ruling on whether an action is properly maintainable as a class action is within his discretion.

---

10. This result is further supported by the fact that where the debtor seeks recovery under section 37-10-105 pursuant to a **counterclaim,** the three year statute of limitations is clearly inapplicable. *See Earle v. Owings,* 72 S.C. 362, 51 S.E. 980 (1905) (statute imposing penalty for usury and providing recovery thereof by counterclaim, by plain implication indicates that the counterclaim is available and is effective as long as the right of action exists on the principal sum; the counterclaim follows the main contract, and is not barred within the three years). *See also* Section 37–10–105, as amended by 1997 Act No. 99 (subsection does not bar a debtor from asserting a violation of this chapter in an action to collect a debt which was brought more than three years from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action).

*Waller v. Seabrook Island Property Owners,* 300 S.C. 465, 388 S.E.2d 799 (1990). A court may not look to the merits when determining whether to certify a class. *Curley v. Cumberland Farms Dairy,* 728 F.Supp. 1123 (D.N.J.1990) (*citing Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974)).

We find no error in the circuit court's certification of the class in this case.

The judgment below is

**AFFIRMED IN RESULT.**